IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| SAVALAS M. LITTLE, SHARON LITTLE, : : : | |
| Plaintiffs, : : | |
| v. : : | No. 5:11-cv-218 (CAR) |
| HHGREGG, INC., HAIER AMERICA TRADING, LLC, NINGBO HICON INTERNATIONAL INDUSTRY CO., LTD., : : : : : | |
| Defendants. : _____ : | |

**ORDER ON DEFENDANT'S MOTION TO DISMISS AND
PLAINTIFFS' MOTION TO STRIKE**

Before the Court is Defendant Ningbo Hicon International Industry Co., Ltd.,'s ("Ningbo Hicon") Motion to Dismiss for Lack of Personal Jurisdiction [Doc. 35] and Plaintiffs Savalas and Sharon Little's Motion to Strike [Doc. 36].  After carefully considering the parties' Motions, the relevant law, and their responses and replies thereto, Defendant Ningbo Hicon's Motion to Dismiss for Lack of Personal Jurisdiction [Doc. 35] is **GRANTED**, and Plaintiffs' Motion to Strike [Doc. 36] is **TERMINATED as MOOT**.

1

BACKGROUND

This is a products liability action brought by Georgia residents Savalas and Sharon Little against hhgregg, Inc. ("hhgregg"), Haier America Trading, LLC, ("Haier"), and Ningbo Hicon.  Plaintiffs allege that a Haier chest freezer (the "Freezer"), manufactured by Ningbo Hicon, distributed by Haier, and sold by hhgregg to Plaintiffs, caused a fire in their home.  Hhgregg is a Delaware corporation that is authorized to do business in Georgia and maintains a retail store in Macon, Georgia.  Haier, a New York limited liability corporation, distributes freezers and refrigerators manufactured by Ningbo Hicon throughout the United States, including Georgia.  Ningbo Hicon is a manufacturing company formed under the laws of the People's Republic of China and has its principle place of business in China.  Ningbo Hicon has no offices, distribution centers, or personnel in Georgia, its employees have never traveled to Georgia to conduct business, and Ningbo Hicon does not advertise or market in Georgia.

Ningbo Hicon manufactures a variety of electrical appliances that are sold internationally by retailers such as hhgregg, Home Depot, and Wal-Mart.  Many of its products are designed for use in the United States and "some [are] even certified to the Energy Star and NSF of USA."  [Doc. 26-1].  Ningbo Hicon relies, in part, on its

independent distributor, Haier, to distribute a large number of its products. Ningbo Hicon also does business on its own with various American retailers. There is no evidence that it ever did any direct business with hhgregg.

In doing business with Haier and retailers, Ningbo Hicon ships its products to various destinations including Savannah, Georgia. The international shipping data compiled by the United States Department of Homeland Security indicates that, since 2006, Ningbo Hicon, identified as "Shipper," shipped a total of 2,647 shipments to the United States, of which 44 were shipped directly to Savannah. Particular "Consignees" (or recipients) of these American shipments include Haier with a total of 631 shipments, two of which were shipped to Savannah; Wal-Mart with a total of 52 shipments, one of which was shipped to Savannah; and Home Depot with one total shipment to Savannah. In all instances, the customers arrange for and accept delivery from Ningbo Hicon, F.O.B. China. These customers then resell the products to their own customers or to the public. There is no indication in the record that Ningbo Hicon is aware where its products will eventually be sold as retail.

Between October 31, 2010, and November 1, 2011, hhgregg retailers in Georgia sold 999 Haier home appliances manufactured by Ningbo Hicon, including 708 chest freezers and 291 compact refrigerators. This resulted in $326,850.00 of in-state revenue

3

for hhgregg.  Plaintiffs are unable to identify the amount of Ningbo Hicon's in-state wholesale manufacturing revenue generated from hhgregg's total sales or Ningbo Hicon's total revenue generated by its manufactured products.

With respect to the instant case, Ningbo Hicon sold and shipped the Freezer to Haier F.O.B. China for distribution.  Haier then sold the Freezer to hhgregg for resale in Georgia.[1]  Plaintiffs purchased the Freezer from hhgregg on June 4, 2007, in Macon.  On November 6, 2010, Plaintiffs' home caught on fire as an alleged result of the negligent design, manufacture, inspection, and testing of the Freezer by Defendants.

Procedural History

On June 2, 2011, Plaintiffs filed the instant products liability action against Defendants, asserting over $280,000 in compensatory damages.  Plaintiffs allege several counts against Ningbo Hicon, including negligence and failure to warn, breach of contract and implied warranties, and strict liability.  On October 27, 2011, Ningbo Hicon filed the instant Motion to Dismiss for Lack of Personal Jurisdiction.  Plaintiffs and Defendants Haier and hhgregg filed a joint response in opposition.[2]  On December

---

[1] As noted earlier, there is no evidence that Ningbo Hicon has any role or knowledge as to where Haier ships its products.

[2] To avoid confusion, the Court will refer to this response brief and the arguments therein as submitted by Plaintiffs.

8, 2011, the Court granted Plaintiffs' request to file a sur-reply, and on March 15, 2012, the Court granted Plaintiffs' request to conduct jurisdictional discovery. On June 22, 2012, jurisdictional discovery concluded without the benefit of any additional discovery.

On June 29, 2012, at the request of the Court, Defendant Ningbo Hicon refiled the instant Motion. However, as noted by Plaintiffs in their subsequent Motion to Strike and their refiled response to Defendant's Motion, Ningbo Hicon's "refiled" Motion to Dismiss is far more substantial than its original Motion. As a result, Plaintiffs filed the instant Motion to Strike as well as a revised response to Defendant's Motion to Dismiss. In their Motion to Strike, Plaintiffs argue that Ningbo Hicon's Affidavit and any other jurisdictional defenses should be struck.[3]

## LEGAL STANDARD

Where a defendant claims lack of personal jurisdiction, a plaintiff must establish a prima facie case of jurisdiction to survive a motion to dismiss. Francosteel Corp. v. M/V Charm, 19 F.3d 624, 626 (11th Cir. 1994). In evaluating if personal jurisdiction exists, "[t]he court construes the allegations in the complaint as true to the

---

[3] The Court acknowledges that Defendant Ningbo Hicon has not filed a Response to Plaintiffs' Motion and the time to do so has not yet expired. However, in light of the Court's instant ruling, the Court concludes that a response from Ningbo Hicon's is unnecessary.

5

extent that they are uncontroverted by defendant's evidence." Paul, Hastings, Janofsky & Walker v. City of Tulsa, Okla., 245 F. Supp. 2d 1248, 1253 (N.D. Ga. 2002) (citations omitted).  Where the defendant challenges the allegations of the complaint through affidavits, "the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction."  Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino, 447 F.3d 1357, 1360 (11th Cir. 2006). Where the plaintiff's complaint and supporting affidavits and defendant's affidavits conflict, the district court must "construe all reasonable inferences in favor of the plaintiff."  Id.  Evidence that a plaintiff can use to contradict a defendant's declaration includes press releases, statements on websites, and government filings.  Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1268–69 (11th Cir. 2002).

## DISCUSSION

A plaintiff who brings state-law claims and asserts personal jurisdiction over a non-resident Defendant, as is the case here, must surmount two obstacles.  Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 256 (11th Cir. 1996).  The exercise of personal

jurisdiction first must be appropriate under Georgia's long-arm statute, and second cannot violate the Due Process Clause of the Fourteenth Amendment.[4]  Id.

Plaintiffs argue that Ningbo Hicon is subject to personal jurisdiction under subsection (3) of the Georgia long-arm statute based on hhgregg's total retail sales revenue from selling Ningbo Hicon's products.  The Court will thus focus its analysis on this portion of the subsection only.  Subsection (3) permits the exercise of personal jurisdiction over a non-resident who commits a tortious injury in Georgia caused by an act or omission outside of Georgia most relevantly if the tortfeaser "*derives substantial revenue from goods used or consumed*" in Georgia.  O.C.G.A. § 9-10-91(3) (emphasis added).

Plaintiffs contend that Ningbo Hicon derives substantial revenue from Georgia based on hhgregg's total in-state retails sales of Ningbo Hicon's products.  Ningbo Hicon argues that hhgregg's retail sales revenue does not establish that Ningbo Hicon

---

[4] Plaintiffs assert that this first step (Georgia's long-arm statute) has been absorbed into the second step (due process), thereby reducing the two-step analysis to only one due process step. However, as the Eleventh Circuit recently clarified, "the Georgia long-arm statute does not grant courts in Georgia personal jurisdiction that is coextensive with procedural due process."  Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1259 (11th Cir. 2010); Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames, Iowa, 279 Ga. 672, 674, 620 S.E.2d 353, 353 (2005). Accordingly, the Court will determine personal jurisdiction using the requisite two-part analysis.

7

derived any revenue from Georgia, much less that it derived *substantial* revenue from Georgia as is required by the statute.  In other words, Ningbo Hicon argues that simply because hhgregg, a client of its own client, Haier, derives substantial revenue from Georgia, it does not necessarily follow that Ningbo Hicon *itself* derives any revenue from Georgia.

Before a court can determine if a non-resident defendant's in-state revenue is substantial, a court must make the preliminary finding that the defendant derives some revenue from Georgia.  See Cont'l Research Corp. v. Reeves, 204 Ga. App. 120, 123, 419 S.E.2d 49, 51 (1992) (holding that retail revenue between $30,000-$45,000 constituted "substantial revenue" under § 9-10-91(3)); see also Original Appalachian Artworks, Inc. v. Wormser, No. C80-195A, 1980 WL 1143, at *3 (N.D. Ga. Sept. 15, 1980) (rejecting venue challenge on ground that "sales of $270.00 in this district, while arguably not substantial, are nevertheless more than miniscule").

In support of its argument that personal jurisdiction is too tenuous under subsection (3), Ningbo Hicon relies on Exceptional Marketing Group, Inc. v. Jones, 749 F. Supp. 2d 1352, 1364 (N.D. Ga. 2010).  In Exceptional Marketing, a Georgia marketing

8

corporation brought suit against its former employee and his current employer, a Massachusetts marketing company, alleging that the former employee disclosed its trade secrets and solicited its Georgia client while working for the Massachusetts marketing company. Id. at 1356. In concluding that the plaintiff company did not have personal jurisdiction over the Massachusetts company under subsection (3) of the long-arm statute, the district court found that there was no evidence that the company had performed work in Georgia or that the company had any presence within Georgia. Id. at 1364. Finding that the revenue of the defendant Massachusetts company's client was insufficient to establish personal jurisdiction, the court stated, "[a]lthough [defendant company's] clients may derive substantial revenue from Georgia, [Plaintiff] has produced no evidence that [defendant company] derives substantial revenue from Georgia." Id.

Plaintiffs argue that the holding in Exceptional Marketing is inapplicable here because, unlike the Massachusetts company's client's in-state revenue, hhgregg's revenue is directly related to Ningbo Hicon's manufactured products. Although Plaintiffs present a notable distinction, the Court nevertheless finds the inherent

premise within <u>Exceptional Marketing</u> persuasive: indirect and attenuated in-state revenue cannot be used as a basis for personal jurisdiction under subsection (3) of the Georgia long-arm statute.

Here, Plaintiffs acknowledge that Ningbo Hicon's "piece of the $326,850.00 pie is not currently known," but, in emphasizing that hhgregg sales figures are "*continuing*," Plaintiffs argue that it can be "reasonably presumed that [Ningbo Hicon's] piece was sufficiently substantial." [Doc. 26, p. 9]  (quotation omitted) (emphasis in original).  The Court declines to make such a consequential presumption based on such an attenuated connection.

Plaintiffs are unable to identify the portion of Ningbo Hicon's revenue that it derives from Georgia and are unable to demonstrate whether this amount, when compared to Ningbo Hicon's entire revenue (also unknown), is substantial.  See <u>Sol Melia, SA v. Brown</u>, 301 Ga. App. 760, 688 S.E.2d 675 (2009) (finding a 0.1% revenue to not be substantial under § 9-10-91(3)).  Without such a figure, the Court cannot conclude that Ningbo Hicon's revenue is substantial.  Additionally, there is nothing in the record that indicates that Ningbo Hicon's revenue is somehow correlated or

10

dependent on hhgregg's retail sales.  See Reeves, 204 Ga. App. at 123, 419 S.E.2d at 51 (finding personal jurisdiction under subsection (3) in part because defendant-company's amount of income was dependent on the sale of its products in Georgia). Indeed, the record indicates that Ningbo Hicon's revenue from Haier is substantially removed and distinct from hhgregg's revenue.  This lack of evidence is in large part due to the tenuous connection between hhgregg and Ningbo Hicon: hhgregg receives Ningbo Hicon's manufactured products from Haier, not from Ningbo Hicon itself.

The Court cannot, therefore, conclude that the revenue that Ningbo Hicon derives is substantial without any indication as to the amount of that revenue. Plaintiffs have pointed to no authority, and the Court can find none, in which a company's derived in-state revenue was unknown, but nevertheless presumed to be substantial.  See Crane v. Home Depot, No. 06C-03-034-RFS, 2008 WL 2231472, at *4 (Del. Super. Ct. May 30, 2008) (concluding that similar "substantial revenue" standard could not be satisfied because of unknown sales and royalties).

Thus, the Court cannot conclude, without more, that Ningbo Hicon's "piece of the pie" is substantial revenue under Georgia's long-arm statute.[5] Accordingly, Plaintiffs have failed to carry their burden of proof that Ningbo Hicon is subject to personal jurisdiction under Georgia's long-arm statute. It is therefore unnecessary to consider whether jurisdiction comports with the Due Process Clause of the Fourteenth Amendment.

## CONCLUSION

Based on the foregoing, the Court concludes that personal jurisdiction is not proper under Georgia's long-arm statute. Accordingly, Defendant Ningbo Hicon's Motion to Dismiss for Lack of Personal Jurisdiction [Doc. 35] is **GRANTED**, and Plaintiffs' Motion to Strike [Doc. 36] is **TERMINATED as MOOT**. The stay of discovery and proceedings in this case previously issued by the Court is hereby **LIFTED**.

**SO ORDERED,** this 18th day of July, 2012.

---

[5] In reaching this conclusion, the Court did not rely on any portion of Defendant's affidavit to which Plaintiffs now object. Instead, the Court concludes that Plaintiffs' Complaint and even the additional submitted evidence is insufficient to properly plead personal jurisdiction over Ningbo Hicon under Georgia's long-arm statute. Accordingly, Plaintiffs' Motion to Strike [Doc. 36] is **TERMINATED as MOOT**.

S/ C. Ashley Royal
C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE

LMH/aes